In The United States District Court
For The Northern District of Baltimore Maryland

United States of America
Plaintiff - Respondent.

Vs.

John Harrison

FILED ___ ENTERED
LOGGED ___ RECEIVED

NOV 3 2023

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

Crim. No. CCB 1:16-cr-00591
Civil. No.

Hon. District Judge Catherine C. Blake

Memorandum In Support of Section § 2255 Motion

COMES NOW DEFENDANT-MOVANT John Harrison submits the following Memorandum in support of his Motion pursuant to 28 U.S.C. § 2255. This memorandum includes and incorporates by reference the section 2255 Model Court Form as well as the information contained and incorporated by reference therein.

Defendant is in federal custody currently being housed at USP Hazelton, Bruceton Mills West Virginia. On March 15, 2019, this Court Sentenced defendant to concurrent terms of file imprisonment on counts one and Three, concurrent five-years terms of Supervised release, and a $200 Special assessment.

## STATEMENT OF FACTS

The relevant facts of the motion and of his memorandum are set forth and pleaded in Section 2255 Model Court Form and Statement of Claims attached hereto.

1.

This Court should accent the allegations of Mr. Harrison as true where they are not "Conclusively" contradicted by the "files and records of the case" for purposes of determining whether Mr. Harrison has stated a prima facie claim for relief and is therefore entitled to an evidentiary hearing. Since the Court must necessarily review the allegations of the Section 2255 Motion for sufficiency. Mr. Harrison will not resect those allegations in this memorandum except as necessary.

Mr. Harrison challenge is due to the ineffective of assistance of counsels deficient performance of his duty to investigate these laws and protect Harrison's actual innocence by these laws, Harrison lost his file by this unlawful conviction and sentence since Harrison has been subject to CONSTITUTIONAL violations Counts 1-3 due to his trial attorney/appellant attorney/sentencing attorney deficient performance.

Mr. Harrison hereby stands before the Court to collaterally attack his substantially unreasonable and unconstitutional Conviction/Sentence. Mr. Harrison seeks a evidentiary hearing to challenge to test the legality of his

Detention, where he has been subject to Federal detention as a unlawful prisoner by violation of Jurisdiction of law established by the Acts of Congress, and the Supreme Court decisions as and in, Lopez, Morrism, and Jones, cited by United States v. Garcia, (i), 143 F. Supp. 2d 791, 793 (E.D. Mich. 2000) hereinafter (Garcia (i)); Waucaush v. United States, 380 F.3d 251 (6th Cir. 2004). Harrison moves to challenge the sufficiency of the evidence provided in light most favorable to the defendant, as the government presentation of evidence of the offense charged, leaving the district Court without Jurisdiction to impose a life sentence. As the sentence imposed in Count (1-3) and (RICO CONSPIRACY) not being a crime of violence, and the facts and elements presented in Counts (1-3) was insufficient.

Count One charges all defendants with conspiring to violate RICO, 18. U.S.C. § 1962 (d), for their actions as TTG members. The government had alleged that defendant Harrison and others conspired to sell heroin, cocaine, and marijuana and to enrich and protect themselves and TTG through murder, assault, robbery, kidnapping, and other acts of violence.

The indictment listed predicate offenses as murder-for-hire, murder, attempted murder, and conspiracy to commit murder under Maryland law; murder-for-hire under 18 U.S.C. § 1958; witness tampering and retaliation under 18 U.S.C. §§ 1512 & 1513; conspiracy to distribute and possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841; and robbery and robbery conspiracy under the Hobbs Act 18 U.S.C. § 1951, and Maryland law. Count One set forth twenty-one overt acts, including drug sales and murder.

Count Two charged Barronette and Harrison with murdering three individuals to maintain and increase their position in TTG, in violation of 18 U.S.C. § 1959(a)(1). However, the government dismissed Count Two on the first day of the trial, but was still allowed to argue the dismissed evidence before the jury without objections by Harrison defense counsel.

Count Three charged all defendants with a narcotics conspiracy, from 2010 through the date of the original indictment in January 2017, involving one kilogram or more of heroin as well as cocaine and marijuana, in violation of 21 U.S.C. § 846.

During the trial, on October 8, 2018, Harrison moved for a Mistrial, noting that on two occasions, Marshals did not allow a spectator to go to the overflow room and instead asked to them leave the courthouse. Affidavits from spectators were included in the motion. Three days later, Harrison submitted another affidavit stating that on October 11, 2020, a Marshal told a spectator that the courtroom was "at capacity" and there was no "Clearance" to open another courtroom. J.A. 1819. The spectator waited outside the courtroom and was admitted after the Mid-Afternoon break. The district court did not rule on Harrison's motion, effectively denying it without objection by Harrison counsel.

During the trial and on Direct Appeal, Harrison challenged the district court's admission of statements that Murder Victim Markee Brown made Prior to his death to Police and Grand Jury. On April 13, 2016, in which Brown stated that Harrison robbed him and Dominique Harris and then Harrison murdered Harris. (This grand Jury was for separate state charges against Harrison that occurred before he was federally indicted in this case).

5.

The Jury in this case issued a Special Verdict finding that Harrison Murdered Harris. The Jury Verdict finding that Harrison conspired to commit the Premeditated Murder of Harris.

At trial, over Harrison's objection, the district court found that Brown's Testimony was admissible under the forfeiture-by-wrongdoing exception to the Confrontation Clause and to the hearsay rule because it found by a preponderance of the evidence that TTB members Murdered Brown to prevent him from testifying and Harrison acquiesced in that Murder. Mr. Harrison was Prejudiced by this.

Mr. Harrison hereby stand before this court to make these compelling arguments pro. se. Even weighing the strength of Harrison's pro se arguments made by the defendants own research, compared of argument deficiently prepared by the defense attorney. Harrison now present precedented case law and the proper basis to afford the district court to Vacate Sentence and reverse the counts in (1-3).

6.

Due to the defficiency of Performance by Harrism's attorney(s) who failed to put the government through Meaningful adversarial testing, and failure to do their due-diligence and search through the proper legal research, to properly defend the movant actual innocence by the law. cost Harrism his life. The ineffective assistance of Counsel violated the safe guards of the Sixth Amendment at every critical stage of the criminal Proceeding. Roe V. Flores- Ortega, 528 U.S. 470, 120 S.Ct. 1029, 148 L.Ed.2d 985. (2cbo)(Citation omitted) Citing Strickland V. Washington, 466 U.S 668 (1984).

Within this brief Mr. Harrism will Present to the district court ample amount of ineffective assistance of both trial/appellate counsels failure to exercise skill, care and diligence in all matters entrusted to them, as a member of the legal Profession. Where Harrism's interest suffered on account of his attorney(s) failure to understand and cooperate with Harrism to apply those rules and principles of law that are well established and clearly defined in the elementary books. Which have been declared in adjudaed cases that have been duly reported

7.

and Published at a sufficient length of the time to have been known to those who exercise reasonable diligence in Keeping Pace with the literature of the Profession. T. Cooley Law of Torts *749 (citation omitted).

Mr. Harrison moves before the district court based upon the Severity and Voluminous of evidence and documents stemming from this indictment # CCB-16-597 and the compelling and extraordinary circumstances Provided within to ask the Court under §2255(g) to appoint new counsel at a evidentiary hearing to properly supplement the issues brought before the Court on these Merits Within, Pursuant to Section 3006 A of Title 18. Mr. Harrison further seek the request to Vacate his sentence and order an evidentiary hearing, upon the grounds that this "Substantially unreasonable" sentence was imposed as the result of Manifest injustice, which were Vindictively caused by overzealous Prosecution, in violation of the Constitution(s) laws of the United States. On March 15, 2019, this Court Sentenced defendant to life imprisonment on Counts one and Three Concurrent five-year terms of supervised release, and a $200 special assessment.

8.

Defendant was advised of his right to file a
Notice of Appeal (See Sentencing Hearing at page. ).
And this Court had no Constitutional right or
Jurisdiction to Sentence Harrison beyond
Sentencing element triggering by United States v.
McCollum. 885 F.3d. 300 (4th Cir 2018)(district Court
erred when it found that defendant's conviction
Under 18 U.S.C. 1959(a) for conspiracy to commit
Murder in aid of racketeering); United States v. Simmons,
999 F.3d 199 (4th Cir 2020)("A RICO conspiracy in
Violation of 18 U.S.C. 1962(d) is not categorically a
Crime of Violence under 18 U.S.C. 924(C)(3)(A) because
its required elements do not require the use, attempted
use, or threatened use of force); United States v. Taylor,
596 U.S. ___ (2022)("Taylor argued neither Hobbs Act
robbery and attempted Hobbs Act robbery qualified as
a "Crime of Violence" for purposes of §924(c) after United
v. Davis, 588 U.S. ___ , In Davis, this court held that
§924(c)(3)(B)'s residual clause Was unconstitutionally vague").

## STATEMENT OF CLAIM

1)  The Conviction And/Or Sentence of Mr. Harrison Us
Violative Of this Sixth Amendment Right To
Ineffective Assistance of Counsel.

9.

1A.)  In Strickland V. Washington 466 U.S. 668, 80 L.Ed 2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that Counsels Performance fell below an objective Standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objective unreasonable Performance, the result of the proceeding would have been different. Id. 466 U.S. at 688-689; Williams V. Taylor, 120 S.Ct. 1495, 1512, 016; 2000 U.S. LEXIS 2837, *53-64; 146 L.Ed 2d 389 (4-18-00); Wiggins V. Smith 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed 2d 471; 2003 U.S. LEXIS 5014 (2003).

The court stated that "Judicial scrutiny of counsel's Performance must be highly deferential" and added that "a court must indulge a strong presumption that Counsel fails within the wide range of reasonable Professional assistance." Id. The Court Clarified that this reference to "highly deferential Scrutiny" referred only to the first or Performance Prong of the test and mean that,

... the defendant must overcome the presumption that, under the Circumstances, the Challenged action Might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689-891

The Court added that,

"... strategic choices made after thorough investigation of law and facts relevant to plausible options are Virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. On other words, Counsel has a duty to make reasonable decision that make particular investigations unnecessary." id.

Two years after its Strickland decision, the Court reaffirmed that this portion of the decision sets forth what test can be made 3 in evaluating whether the performance of counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness. Kimmelman, Morrison, 477 U.S. 365, 385-387, 91 L Ed 2d 305, 106 S. Ct. 2574 (1986).

11.

See Williams V. Taylor, 120 S.Ct. 1495; 1512-16; 2000 U.S. LEXIS 2837, **53-64; 146 L.Ed 2d 389(4-18-00); Wiggins V. Smith, 539 U.S. 510; 123 S.Ct. 2535; 156 L.Ed. 2d. 471; 2003 U.S. LEXIS 5014(2003); Rompella V. Beard, ___ U.S.___, 125 S.Ct. 2456; 162 L.Ed 2d 360, 2005 U.S. LEXIS 4846 (2005).

The Supreme Court noted that;

"... a single serious error may support a claim of ineffective assistance of counsel."

Kimmelman v. Morrison, 477 U.S. at 348. The Court added that this "Single serious error" could cause Counsel's Performance's to fall "below the level of reasonable professional assistance", even where, "Counsel's Performance at trial [was] generally credible enough" and even where the Court found that no "strategy" was involved in that case and that counsel's Performance thereby fell below the Strickland V. Washington objective standard because Counsel's failure was based "on counsel mistaken beliefs" as to the laws governing discovery. [See] 477 U.S. at 386.4

The Supreme Court added:

_____

1. United States v. Dawson, 857 F 2d 923, 927-928 (3d Cir. 1988).

2. The Court stated that "facts which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." Strickland v. Washington, 466 U.S. at 695.

3. This presupposes, for the instant argument, that the defendant provides counsel with complete and accurate information and did not place any restrictions on counsel's strategy. Strickland v. Washington, 466 U.S. 691.

4. See also United States v Alexander, 2006 U.S. App. LEXIS 5602 (DC. Cir. 3-2-06)(same); Murray v. Carrier, 477 U.S. 478, 496, 91 LED 2d 394, 106 S.Ct. 2639 (1986)("The right to effective assistance of counsel ... may in a particular case be violated be even an isolated error of counsel in that error is sufficiently egregious and prejudicial."); Smith v. United States, 871 F. Supp. 251, 2255 & [n.8](E.D. Va, 1994)(finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable () error in the PSR," but pointing out that "[t]he error was in innocent inadvertence, and effective in all other respects."); United States V. Al King Jones, 2001 US. Dist LEXIS 1740 (E.D.LA 2-9-01)(same).

TRULINCS  40369050 - HOFFMAN, MARCELLAS - Unit: HAZ-B-A

---------------------------------------------------------------------------------

FROM: 40369050
TO:
SUBJECT: Part 2 of 2255 Motion
DATE: 09/11/2023 11:15:59 AM

Brown v. Caraway,719 F.3d 583 (7th Cir.2013);United States v. Busley,523 U.S. at 623,Davis v. United States,417 U.S. 333,343 (1974),see also United States v. Hayman, 342 U.S. 205,219 (1952);Borden v. United States, 141 S.Ct. 1817,Apprendi v. New Jersey,530 U.S. 466,490,120 S.Ct.2348,147 L.Ed.2d 435 (2000). c

In Strickland v. Maryland, 466 U.S. 668,80 L.Ed.2d 674,104 S.Ct. 2052 (1994). the Supreme Court established a two prong test to govern ineffective of counsel claims. To obtained reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show:(1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. Id. at 466 U.S. at 688-689;Williams v. Taylor,120 S.Ct. 1495,1512016;2000 U.S. LEXIS 2837,**53-64; 146 L.Ed.2d S. 2527,2535;156 L.Ed.2d 471,2003 U.S. LEXIS 5014(2003).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The Court clarified that this reference to "highly deferential scrutiny only 2 to the first or performance prong of the test and meant that,

"...the defendant must overcome the presumption that,under the circumstances, the challenged  actions 'might be considered sound trial strategy".
Strickland v. Washington, 466 U.S. at 689-691

The Court added that,

"... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments supported the limitations on investigation. In other words, counsel has a duty to make a reasonable decision that makes particular investigation unnecessary." Id.

Two years after its Strickland decision, the Court reaffirmed that this portion of the decision sets forth what test that can be made 3 in evaluating whether the performance of counsel was within the range of "reasonable professional assistance." or fell below an objective standard of reasonableness Kimmelman v. Morrison, 477 U.S. 365,385-387,91 L.Ed.2d 305,106 S.Ct. 2574 (1986). See also: Williams v. Taylor, 120 S.Ct. 1495,1512-16;2000 U.S.LEXIS 2837,**53-64;146 L.Ed.2d 389 (4-18-00_;Wiggins v. Smith,539 U.S. 510;123 S.Ct.2527,2535;156 L.Ed.2d 471;2003 U.S.LEXIS 5014 (2003);Rompilla v. Beard,__U.S.___,125 S.Ct.2456;162 L.Ed.2d 360;2005 U.S. LEXIS 4846 (2005).

The Supreme Court noted that,

...a single serious error may support a claim of ineffective assistance of counsel."

Kimmelman v. Morrison, 477 U.S. at 384. The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial [was] generally creditable enough", and even where counsel had made "vigous cross-examination,attempts to discredit witness, and [an] effort to establish a different version of the facts." Id. 477 U.S. at 366. 4

The Court held that the determining factor was whether or not counsel's single serious error" or "failure" was the result of, or attributable to, a trial "strategy". Id. 477 U.S. 384-386; Williams v. Taylor, 120 S.Ct. 1495,1512-16;200 U.S. LEXIS 2837,**53-64; 146 L.Ed.2d 389 (4-18-00); Wiggins v. Smith,539 U.S. 510; 123 S.Ct.2527,2535; 156 L.Ed.2d 471;2003 U.S. LEXIS 5014 (2003).

1A.) The Court then found that no "strategy" was involve in that case and that counsel's performance thereby fell below the Strickland v. Washington objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the law governing discovery.
Id. 477 U.S. at 385.

The Supreme Court added:

TRULINCS  40369050 - HOFFMAN, MARCELLAS - Unit: HAZ-B-A

--------------------------------------------------------------------------------------------

"viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference',ibid., to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law-or a weak attempt to shift blame for inadequate preparation. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary.'Id. Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery." Kimmelman v. Morrison, 477 U.S. 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of Strickland. See Kimmelman v. Morrison, 477 U.S. at 385-387; Williams v. Taylor, 120 S.Ct. 1495;1512-16;2000 U.S. LEXIS 2837,**53-64; 146 L.Ed.2d 389 (4-18-00); Wiggins v. Smith, 539 U.S. 510; 123 S.Ct. 2527,2535; 156 L.Ed.2d 471; 2003 U.S. LEXIS 5014 (2003)(counsel's failure to investigate mitigating evidence could not be strategic "because the investigation supporting their choice was unreasonable"); Rompolla v. Beard,___ U.S.___, 125 S.Ct. 2456; 162 L.Ed.2d 360; 2005 U.S. LEXIS 4846 (2005). 5

----------------------------------------

5 The decision of the lower Courts have been followed this unambiguous mandate from the Supreme Court. See United States v. Stricklin, 290 F.3d 748; 2002 U.S. App. LEXIS 9118 (5th Cir. 5-1-02)(counsel's performance below objective standard of Strickland due to counsel's failure to investigate guidelines and case law defining "mixture or substance" for sentencing for narcotics violations); United States v. Hylton,, 2002 U.S. App. LEXIS 12818 ( DC Cir. 6-28-02)(counsel's performance below objective standard of Strickland due to failure to investigate facts and law relevant to defense at trial); United States v. Holder, 410 F.3d 651; 2005 U.S. App. LEXIS 10380 (10th Cir. 2005)((same-failure to call defense witness); United States v. Alferahin, 2006 U.S. App. LEXIS 575 (9th Cir.2006)(failure to move for materiality jury instruction); United States v. Thornton, 2005 U.S. Dist. LEXIS 1764 (ED PA 2005)(failure to object to introduction of prejudicial Fed. R. Evid. 404(b)(evidence); United States v. McCoy, 4120 F.3d 124; 2005 U.S. App. LEXIS 10372 (3d Cir.2005)(attorney agreed to prejudicial stipulation at trial); Bruce v. United States, 256 F.3d 592;2001 U.S. App. LEXIS 15054 (7th Cir. 2001); Brown v. Myers, 137 F.3d 1154 (9th Cir.1998) ( counsel failed to investigate and present available testimony supporting petitioner's alibi); United States v. Kauffman, 109 F.3d 186 (3d Cir.1997)( failure to investigate law and facts relevant to plausible defense ineffective assistance); Williams v. Ward, 110 F.3d 1508 (10th Cir. 1997)(same); Foster v. Lockhart, 9 F.3d 722,726 (8th Cir.1993)(failure to investigate facts and law relative to motion for reduction in sentence for "minor role"); Smith v. Stewart, 140 F.3d 1263 (9th Cir.), cert denied, 525 U.S. 929 (1998) (Failure to investigate mitigating evidence was ineffective assistance of counsel).

*15*

TRULINCS  40369050 - HOFFMAN, MARCELLAS - Unit: HAZ-B-A

-------------------------------------------------------------------------------------------

FROM: 40369050
TO:
SUBJECT: Part 3 of 2255 Motion
DATE: 09/11/2023 11:14:18 AM

In short, no deference is due to counsel's actions, and the performance of counsel falls below the Strickland objective standard of reasonableness 6 if counsel's specific acts or omission are not demonstrated 7 the result of actual strategic choice made between or among all plausible options "after through investigation of law and facts relevant to [the] options." Strickland,466 U.S. at 691'Kimmelman v. Morrison, 477 U.S. at 385-387;Williams v. Taylor, 120 S.Ct. 1512-16;2000 U.S.LEXIS 2837,**53-64;146 L.Ed.2d 389 (4-18-00) 8

---

6 for purposes of this portion of the Strickland analysis, the Court presumes that counsel's failure were at least  potentially prejudicial to the defendant Kimmelman v. Morrison, 477 U.S. at 365,387,390-91.
7 Bruce v. United States,256 F.3d 592;2001 U.S. App. LEXIS 15054 (7th Cir.2001)(absent factual support in the record court could not rely on presumption attorney's failure to investigate was reasonable);Wiggins v. Smith,539 U.S. 510;123 S.Ct. 2535;156 L.Ed.2d 471;2003 U.S. LEXIS 5014 (2003)(court's assumption" that counsel made reasonable investigation vacated when unsupported by the record);Washington v. Smith, 219 F.3d 620-31 (7th Cir.2000)(performance professional unreasonable where counsel failed to produce critical alibi witness at trial; counsel made only "minimum attempts" to contact witness before trial and waited to subpoena her until two days before she was to testify, despite knowing that she was "hard to reach");United States v. Burrows, 872 F.2d 915,918-919 (9th Cir.1989)(record must 'conclusively' demonstrate strategic nature of counsel's actions); Harris v. Reed, 894 F.871,878 (7th Cir.1990)(reviewing court could "not construct strategic defenses which counsel does not offer");(citing Kimmelman v. Morrison,477 U.S. at 386); Moffet v. Kolb, 930 F.2d 1156,1160-61 (7th Cir.1991)(counsel's failure to use available police report, to impeach prosecution witness's statement and support theory of defense,below objective standard of Strickland);United States v. Headley, 923 F.2d 1079,1084 (3d Cir.1991)(remanding for hearing where there was "[no] rational basis" in the record to believe that sentencing counsel's failure to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice");United States v. Acklen, 47 F.3d 739,743-44 (5th Cir.1995)(remanding for evidentiary hearing where was noting in record indicate counsel's failure were attributable to strategic choice among all plausible alternatives available for defense); United States v. Dawson, 857 F.2d 923,929 (3d Cir.1988)(absent evidence in the record,"this court will not speculate on trial counsel's motives");Nichols v. United States, 75 F.3d 1137 (7th Cir.1996)(same).
8The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defense cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tatical" or "objectively reasonable", because "counsel can hardly be said to have a strategic choice against pursuing a certain line of investigation when she/he has not yet obtained the facts on which such a decision could be made".Gray;supra,878 F.2d at 711 (citing Strickland,466 U.S. at 690-91); Holsomback v. White,133 F.3d 1382 (11th Cir.1998)(same)

16

Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant, ".... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failure, the district court entertaining a motion under 28 U.S.C. 2255 must hold an evidentiary hearing.[9] A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor resolve the district court from the requirement of holding an evidentiary hearing.[10]

In Mr. Harrison's case, he has made specific, sworn, factual allegations which this court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case. The allegations of Mr. Harrison as to the "performance" of counsels include the following:

181.) <u>Claim Number one</u>

) Mr. Harrison restates, repleads and realleges the facts, pleadings, and allegations set forth in paragraphs 1 - )

17

Mr. Harrison starts with the opinion of the Fourth Circuit Court of Appeals decision in this case, and from Appellant Counsels brief on his direct appeal. Page 10-11:

") Appellants bring fifteen Claims on Appeal. All that the district court erred in refusing to dismiss the RICO conspiracy Charge in Count One on grounds that the RICO Conspiracy statute is unconstitutionally Vague."

") We reject Appellants' argument as we have already upheld the Constitutionality of the RICO Conspiracy statute and Davis does not disturb our ruling"

) Mr. Harrison's conviction and sentence is Violating of his Sixth Amendment Constitutional right to effective assistance of Counsel in pretrial, trial, Sentencing, and direct appeal process as hereinafter more fully assents. The Fourth Circuit opinion on appeal demonstrate the ineffective of Counsel on direct appeal as stated above.

) Mr. Harrison Challenges the Subject Matter Jurisdiction of this Court to have been able to try and convict, and sentenced him under 1111(a) without being indicted for First-Degree Murder, and amending the indictment

18

though "Uncuved Verdict Forms". Prior Counsels should have objected. Furthermore, instead of prior Counsels arguing on direct appeal issues that was "already upheld" by the Fourth Circuit, they should have argued that RICO Conspiracy was not a Crime of Violence. See United States v. Simmons, 999 F.3d 199 (4th Cir. 2020); also United States v. McCollum, 885 F.3d 300 (4th Cir. 2018).

Harrison's conviction, Pursuant to 18 U.S.C. § 1962(d), to prove a RICO conspiracy, evidence must show the existence of a RICO "enterprise" in which the defendant conspired to participate; and that the defendant conspired that a Member of the enterprise would perform at least two racketeering acts that the defendant constituting a "pattern of racketeering activity". See Salinas v. United States, 522 U.S. 52, 62, 118 S.Ct. 469, 139 L. Ed 2d 352 (1997); United States v. Cornell, 780 F.3d 616 (4th Cir. 2015)(quoting United States v. Mouzone, 687 F.3d 207, 218 (4th Cir. 2012)). Although such "conspiracy may exist even if a Conspirator does not agree to commit or facilitate each and every Part" of a racketeering act, each conspirator must have shared "the same criminal objective". Salinas, 522 U.S. 63-64.

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed 2d 246 (1981). It includes not only legal entities but also "any union or group of individuals associated in fact." 18 U.S.C. 1961(14). Nevertheless, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946, 129 S.Ct. 2237, 173 L.Ed 2d 1265 (2009).

To prove a "pattern of racketeering activity," the evidence[?] must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H. J. Inc. v. Nw Bell Tel. Co. 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed 2d 195 (1989). Racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

characteristics and are not isolated events". Id at 240. (internal quotation marks omitted). To constitute or threaten continued criminal activity, racketeering acts may either be closed-ended, i.e., "a closed ended Period of repeated conduct," or open-ended, i.e., "Naturally" project[ing] into the future with a threat of repetition. Id at 241-42.

Here, in Mr. Harrison's case, the evidence did not establish a single conspiracy, a RICO enterprise encompassing all four ventures, or a pattern of racketeering activity. See Salinas, 522 U.S. 62; Cornell, 780 F 3d at 621. The government's failure is clear, and Mr. Harrison's conviction must be vacated.

) Prior counsels did not make these arguments, nor did counsel argue on direct appeal, a Multiple conspiracy claim. Prior counsel had told the district court;

MR. PROCTOR: Your Honor, out of an abundance of caution, we think we should renew my motion at the end — that was the end of the jury instruction, for the previous two instructions we requested. we know what the ruling will be, but we don't want ~~them~~ any appellate

21

Court Waived it.

THE COURT: All right. You have renewed your objection. That would be on the Multiple Conspiracy and the missing Witness issue.

MR. PROCTOR: Yes, Ma'am

THE COURT: Okay.

( TR. at page 16 lines 15-24 October 25, 2018 Jury
    (Instructions)

) The government had argued during its closing arguments to the Jury.

THE PROSECUTOR: You heard testimony that Dominique Harris, one of the murder victims in this case, his nickname was Gums and that Binki was the only person identified in that murder. And the further discussion. they're trying to figure out if an undercover had purchased from them before because people had started to get arrested"
( Government Closing Argument at page 113-lines 4-6)( Also see pages 92 — 97 of Closing Arguments).
)

A multiple Conspiracy instruction is given when the indictment charges a single, overall Conspiracy, but the evidence at trial suggests separate

22

Conspiracies and not the overall conspiracy. See
United States v. Brandon, 17 F 3d 409, 449 (1st Cir. 1994).
("A trial court should grant a defendant's request
for a Multiple conspiracy instruction if, 'on
the evidence adduced at trial, a reasonable
jury could find More than one such illicit
agreement, or could find an agreement different
from the one charged'(Citation omitted)"); United States
v. Stowell, 947 F 2d 1251, 1258 (5th Cir. 1991)(same)";
United States v. Dermott, 245 F 3d 133 (2d Cir. 2001)
(Case reversed where there was a variance between
conspiracy charged and proof at trial)."where single
or Multiple conspiracies have been shown is
usually a question of fact to be resolved by
the Jury"). United States v. Leavis, 853 F 2d 215,
218 (4th Cir. 1988)(same).

) This instruction has sometimes been referred to
as the "rimless wheel" instruction as set forth
in Kolleakos v. United States 328 U.S. 750, 754-55,
773-74 (1946), and requires the Jury to acquit
all defendants charged in the single conspiracy
if they find that a series of separate conspiracies
existed rather than one conspiracy charged in the
indictment.

See United States v. Bostic, 780 F 3d 465, 968 (4th Cir. 1973)("Where one conspiracy is specifically charged, proof of different and disconnected ones will not sustain a conviction").

) It was imperative that defense counsel requested a multiple conspiracy instruction, as it may not be reversible error to omit the multiple conspiracy instruction if it is not timely requested. See Ruggero v. United States, 20 F 3d 1387, 1389 (6th Cir. 1994)(Claim on appeal reviewed for plain error where defendant failed to request a multiple conspiracy jury instruction and trial court did not sua sonte, give said instruction). Trial Counsels was ineffective for failing to argue the multiple conspiracy on on direct appeal.

) Trial counsels also did not properly make arguments during Harrison's sentencing. The district court used U.S.S.G 1B1.5. The drug trafficking offense U.S.S.G. 2D1.1(2)(1) which provides for a cross-reference when a homicide occurs during the course of drug trafficking activity. See United States v. Richardson, 51 F Appx 90, 91-95 (4th Cir. 2002);

24

United States v. Mc Collum, 885 F3d 300 (4th Cir. 2018) (district court erred when it found that defendants conviction under 1959(a) for conspiracy to commit murder in aid of racketeering; United States v. Felton, 166 App. x 64, 67-68 (4th Cir. 2006) (finding the district court erred in applying the murder cross-reference to defendants' sentence because the murder was not charged in the indictment or found by a jury beyond a reasonable doubt)

) Harrison due process rights were violated because all elements was not explained to him, and he did not understand the true nature of the offense.

) Trial counsels also failed to inform Harrison about a plea offer by the Government before trial. And any plea would not have required Harrison to waive his right to file a petition to 28. U.S.C. 2255 for ineffective assistance of counsel.

) However, trial counsels was ineffective for having their client as to trial and sentencing without a plea agreement.

) Counsel's omissions set forth in paragraph 1– Were not the result of reasonable decision based on the strategic or tactical choices among all plausible options available to Counsel for the defense of Mr. Harrison during the pretrial and trial, and direct appeal process

) Counsel's omissions set forth in paragraph– were the result of counsel's abdication of the duty and responsibility to advocate Mr. Harrison's case and cause during the pretrial and trial, and appeal process.

1B2.) <u>Claim Number Two</u>

) Mr. Harrison restates, repleads, and realleges the facts, pleadings, and allegations set forth in paragraphs 1– herein.

) Mr. Harrison was denied effective assistance of counsel during trial, sentencing, and direct appeal process in his case hereinafter more fully appears

) Trial counsel during trial stated to the district court:

MS. WICKS: And while we're here, he– we think as to Mr. Harrison, Mr. Harrison's one of the over, acts is Mr. Harrison and Mr. Borronette killing Mr. Chase.

26

the interview, this witness says that Tana tells him that it was Thua and Pops that killed Beezy.

MR. HAWLEY: No. He says Tana told a cousin of someone he knows. Tana did not tell him—

MS. WICKS: No. at 1:05:55, he says, "Tana told me".

MR. HANLEY: No, he does not. He says, "Tana told somebody else". Its double - its a double hearsay.

THE COURT: We can't resolve that right now. That's another thing you're going to have to - -

MR. HANLEY: We can make a clip of that.

THE COURT: Make a clip of that.

MR. HANLEY: Yeah

THE COURT: Of thats what he says.

MS. WICKS: Can I confront the witness with that, or does the court want me to wait?

THE COURT: No. This is much too unsettled.

MS. WICKS: Understand Okay.

(Tr. at pages 130-131 Government Witness "Tuer Page")

27

MS. WICKS: Now you're testifying today that Montana Barronette also claimed that Beezy was going to kill Binkie correct?

A Yes.

Q And your testimony is based that - based on Montana tells you, based on that information, that then he and Binkie as and kill Beezy, correct?

A Yes.

MS. WICKS: And you knew back then he was in special ed; correct?

A No.

Q You didn't know that?

[Tr. at pages 136 - 139 Government Witness "Robinson)

MS. WICKS: Did you ever approach or talk to Binkie about selling drugs with you in South Baltimore?

A Years ago. He wasn't interested in it. He wasn't interested.

[Tr. at pages 11 - 18 Government Witness "Donte Pauling")

MS Wicks Continued.

28.

MS. WICKS: My concern is that, again, we're getting into the area about where we think this witness claims to have knowledge of there being a green light on Binkie. And then we'm objecting to that.

And we don't. We think Your Honor had ruled that what Mr. Barronette had said about the issue is coming in. But now this witness is testifying to about what Beezy said about Binkie. So thats hearsay, and we don't see how its relevant.

THE COURT: So its leading us to a Murder? Tell me.

(TR. at pages 19-44)

MS. WICKS: we'm going to show you what we'll mark as John Harrison 2, just looking at the first page. And we'm directing your attention to the name.

A. That say october. Yeah. we see the name, but we'm talking about -- you talking about back in --

~~MS WICKS:~~

A. No. You saying between December and February. we'm saying we'm not sure if he was my attorney then. You just showing me a piece of paper with his name on it, but the date say october 2nd

MS. WICKS: Your Honor, we have a question about the piece of paper.

29.

THE COURT: Is it critical to the question?

MS. WICKS: Yes.

THE COURT: Okay.

(Bench conference on the record).

MS. WICKS: And Your Honor, the problem is now I look like an idiot in front of the jury. But the proffer letter that the Government gave me when I printed it out on my computer change the date — and I don't have a signed one. I'm just trying to refresh his recollection with who the name of his lawyer is

THE COURT: What's the matter? He said he just doesn't remember the name of his lawyer. That's what I'm getting to. Why are we making a big deal about that?

MS. WICKS: Now I can't use this document with him because its dated October 2nd. I don't have — I don't have a copy of his Proffer.

THE COURT: That's a different issue, but I don't see why you can't ask him the questions about the Proffer and so right ahead and show him that document.

MS. WICKS: And I just did and he noticed the date on it. So its — he already commented in front of the jury that the date is wrong —

30

MR. GARDNER: The Government stipulates -- Will stipulate that he signed a letter with the exact content in it. I mean its clear from his grand Jury testimony that he had a proffer letter going into it. It is that letter.

THE COURT: We'll tell the Jury that thats the wrong date on the letter. Whats the right date?

MR. GARDNER: We apologize. Your Honor, we don't know the right date. Its before his grand Jury testimony.

THE COURT: Okay. What else do you need to show him the letter for? Was it Just -- I thought you were showing him Just to remind him that his lawyer's name was Mr. Fischer.

MS. WICKS: Yes. Thats what I was using it at this point. Its something I planned to use. I realized it before I went up, and thats why I conferred with Mr. Gardner that its actually the date changed on My computer. So --

THE COURT: All right. Well, if you need to ask him about that letter, for something more Substantive than the name of his attorney. We'll tell the Jury that this is the wrong date on the letter but everybody agrees that was his lawyer.

31

MS. WICKS: Okay. Thank you.

MR. ROMANO: Is that being offered for evidence, then, or just for identification

MS. WICKS: Yes. It's been marked for identification as I was trying to refresh his recollection (Tr. at pages 73-78).

(MS. WICKS Continued)

MS. WICKS: And then, again, You were in custody from, I believe, around October 2015 and September 22nd, 2017; correct?

A. September 27th, I gave my time back on the 22nd.

MS. WICKS: I apologize?

A. September 27th I was released. I gave my time back on the twenty-seventh--second

MS. WICKS: And what do you mean by "I gave my time back?"

A. The--I went back to court.

MR. GARDNER: Your Honor, I apologize. We have to approch.

THE COURT: Okay.

(Bench conference on the record)

32

MR. GARDNER: I believe the answer is the Gun Trace Task Force. I think he was convicted! Everything came out with the Gun Trace Task Force, and his conviction was reversed and he got out, is what I think -- is what I think the answer is going to be. I don't think he has an actual conviction. I think he was vacated. I don't care if you -- if the conviction -- I just don't want to get into the Gun Trace Task Force.

THE COURT: Okay. Well, I assume Ms. Wicks was just following up.

MS. WICKS: I really didn't know what the answer --

MR. GARDNER: I know. It's no one's fault.

THE COURT: So well just - the point was how long he was locked up.

MS. WICKS: Right. But I think I can certainly -- probably can lead him to just explain that.

(TR. at Pages 76-78, Also pages 19-35)

) Defendant Harrison Should Be Granted A New Trial Based on The Government's Failure To Produce Brady Evidence Regarding Government Witnesses 3025 And Because of The Gun Trace Task Force.

33

As shown from above, and from the opening state-
ments forward throughout the trial, the government
Was aware of the Gun Trace Task Force Misconduct,
but failed to provide Mr. Harrison with the Brady
evidence. During Ms Wicks cross-examination of
government witness "Donte Pauling" the prosecutor
Mr. Gardner, told the Court: "I just don't want to
get into the Gun Trace Task Force". ced.

The government may not wanted to "get into the Gun
Trace Task Force" But Mr. Harrison had a right
to put that evidence before his jury, and to
further cross-examine government witness "Donte Pauling"
about the Gun Trace Task Force and why he was
convicted "everything came out with the Gun Trace
Task Force".

Unfortunately Mr. Harrison's ineffective assistance of
counsel Ms. Wicks failed to properly cross-examine
the government witness, and even counsel herself told
the district court: "Your Honor the problem is now so
look like an idiot in front of the jury". ced.
Ms. Wicks was unaware of the witness proffer, or
its content at the time of Mr. Harrison's trial.

34

However, Mr. Gardner did know the contents of the witness proffers and about the Gun Trace Task Force Misconduct and his failure to produce it as Brady evidence violated Mr. Harrison's due process right to a fair trial.

In an abundance of causation, Mr. Harrison does not know the extent date of the Brady knowledge regarding Gun Trace Task Force agents and witnesses, We put forth the following arguments. Brady safeguards defendants from prosecutorial foul play with respect to favorable evidence. 373 U.S. at 87. This doctrine recognizes the "broad duty of disclosure" consistent with the special role the prosecution has in "the search for truth in criminal trials." Strickler v Greene 527. U.S. 263, 281 (1999); United States v. Bagley, 473 U.S. 667, 675 n. 6 (1985) (noting that the prosecutor trascends strict adversarial categorization in pursuit of justice); Banks v. Dretke, 540 U.S. 668 (2004 ("State persisted in hiding [prosecution witness's] informant status and misleadingly presented that "it had complied in full with its Brady disclosure obligations" and prosecutors failed to correct witness's "misrepresent(ations) [of] his dealings with police" on testimony at guilt

and penalty phases of trial: "When Police or Prosecutors Conceal Significant exculsatory or impeachment material in the State possession, it is ordinarily incumbent on the State to set the record straight"); Dow v. Virga, 729 F.3d 1041 (9th Cir. 2013) (Prosecutor "knowingly elicites and then failed to correct false testimony" by police detective, who falsely testified that accused rather than defense counsel was source of request that "each of the participants in a lineup wear a bandage under his right eye at location at which [accused] had a small scar under his," and prosecutor thereafter "told the Jury during closing argument that [accused] had demonstrated consciousness of guilt by truing to hide his scar in order to prevent the sole eyewitness from identifying him"); Munchinski v. Wilson, 694 F.3d 308 (3d Cir 2012) (Prosecutors withheld "almost a dozen articles of exculsatory evidence", "[T]he scope of the Brady violation here is staggering").

Accordinaly, Brady prohibits (1) the willful or inadvertent suppression by the state of (2) favorable evidence (3) material to the final verdict. See Junisee v. Zook, 876 F.3d 551, 564 (9th Cir. 2017) (quoting Banks v. Dretke, 540 U.S. 668, 691 (2004)).

Suppressed evidence is any "information [that] had been known to the prosecution but unknown to the defense." Agurs, 427 U.S. at 103. Len United States v. Stillwell, Nos. 18-3074, 18-3489, and 19-790, the Second Circuit (Cabranes, Raggi Korman by designation) the Second Circuit began with a reminder of the government's obligations under Brady v. Maryland, 373 U.S. 83 (1963), to "learn of any favorable evidence known to others acting on the government's behalf in the case" and to disclose material exculpatory or impeaching evidence. That is, the government violates Brady when it willfully or inadvertently suppress material evidence favorable to the defendant and the failure to disclose the evidence results in prejudice. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to defense, the result of the proceeding would have been different".

The panel did not address whether the government failed to comply with Brady. Instead, after "due consideration," the Second Circuit determined that it could not reach the defendants' Brady claim, which had not yet been presented to the district court. Accordingly, it remanded the case to the district court, noting that the defendants' deadline to file post-trial motions was only a couple months away. See Fed R. Crim. P. 33.

37

The rule is broad in the scope of evidence to which it applies. See U.S. v. Hunter, 2022 U.S. App. LEXIS 10630 (2d Cir. 2022). Under the Brady rule, the Prosecution is required to disclose evidence where the evidence is material either to guilt or to punishment. To establish Materiality, a defendant must show that he was prejudice by the Prosecution's failure to disclose. Evidence is material within the meaning of Brady when there is a reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial. In other words, the defendants are entitled to a new trial only if they establish the [prejudice necessary to satisfy the Materiality meaning]. This inquiry presents a mixed question of law and fact. While the trial judge's factual conclusions as to the effect on nondisclosure are entitled to great weight, the appellate court examines the record de novo to determine whether the evidence in question is material as a matter of law. Specially, the Brady inquiry considers evidence cumulatively and inconsistently, imposes on the Prosecution a duty to learn any of favorable evidence known to the others acting on the government's behalf in the case.

In *Davis v. Hunter*, 2012 U.S. Dist LEXIS 41354; 2012 WL 1020237 (E.D.N.Y. 2012). "a criminal defendant is entitled to a new trial where the suppressed evidence is material- i.e. where "disclosure of the suppressed evidence to competent counsel would have made a different result, result reasonably probable". *Kyles*, 514 U.S. at 445. This is neither a test of sufficiency of the evidence nor of harmless error. Rather, a "reasonable probability" of a different result is shown where the government's evidentiary suppression "undermines confidence in the outcome of the trial". Id. at 435; see also *Leka v. Portuondo*, 257 F.3d 89, 104 (2nd Cir. 2001)("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial... resulting in a verdict worthy of confidence"). The Supreme Court has emphasized the degree of professional judgment involved in applying the test:

Here, the knowledge of a direct case agents of the Gun Trace Task Force presenting false testimony against Mr. Harrison in affidavits, and before grand juries to seek an DEATH PENALTY

39

indictment and other government witnesses false testimony known by the Government violated his due process rights to a fair proceeding, and destroy Count one and three of the indictment and sentencing enhancements. The entry completation of the case would have been different had Mr. Harrison been able to present this evidence to the jury. In United States v. Meregildo, 920 F. Supp 2d 434; 2013 U.S. Dist. LEXIS 13514, 2013 WL 364217 (S.D.N.Y. 2013), the district Court discussed the unique role of an American Prosecutor. The Due Process Clause of the Fifth Amendment requires the Government to disclose favorable material-evidence to a criminal defendant Brady v. Maryland, 373 U.S. 83, 86, 83 S.Ct. 194, 10 L.Ed 2d 218 (1963). The Government's obligation under Brady encompass not only information that is admissible in its present form but also material information that could potentially lead to admissible evidence-favorable to the defense. United States v Rodriguez, 496 F 3d 221, 226 (2nd Cir. 2007)("The obligation is designed to serve the objective of both fairness and accuracy in criminal prosecution").

46.

In Mr. Harrison's direct appeal brief, Prior Counsel argued on Issues 22, 23, 26, 27, and 28, as follows:

In United States v. Taylor, 942 F3d 205 (4th Cir. 2019) this Court recounted the appalling Saga of the Baltimore City Police Departments Gun Trace Task Force ("GTTF"). Seven GTTF officers were convicted of racketeering conspiracy and other offenses for "robbing Citizens during the course of their Police Service, taking Money, Jewelry, and other items." "___." Id. at 210. The officers "conducted illegal searches and stole Money, drugs and other items while acting in a law Enforcement Capacity" and "Submitted overtime forms for themselves and for other GTTF officers for hours they had not worked." "___." Id. at 212. Wayne Jenkins, Evodio Hendrix, and Marcus Taylor were three of the convicted GTTF officers. Id. at 210, 212, 220. Jenkins also pleaded guilty to a Separate charge of destroying, altering, and falsifying records in a federal investigation, United States v. Jenkins, Case No, 1:17-cr-00638-CCB (D. Md. filed Nov. 30, 2017) ECF5.

41

In its affidavit establishing probable cause for the tracking order and wiretap orders on GTT4, the government relied heavily on events related to the arrest of Linton Broughton on January 22, 2016. GTTF felons Jenkins Hendix, and Taylor were the arresting officers. When the evidence derived from these three discredited witnesses is disregarded, the government failed to establish probable cause for the orders it obtained from the District Court.

To accept the affiant's interpretation of the conversation, the issuing Judge had to credit information about the chase of Broughton provided by GTTF officers who had breached the "Noble trust in police officers to define and enforce, in the first instance, the delicate line between the chaos of lawlessness and the order of the rule of law." Taylor, 942 F.3d at 227. Their information about the arrest of Burronette and Broughton, as well as the recovery of the firearm, was not credible and should not been considered in determining whether the affidavit was supported by probable cause.

42

The district courts rejection of arguments related to the GTTF is inconsistent with the record from the case involving the disgraced officers. The superseding indictment in Taylor alleged that that the racketeering conspiracy involving Jenkins, Hendrix, Taylor and others began in 2015, Well before the January 2016 indictment. JA xx [Case No. 1:17-cr-00106-CCB, ECF 137] at 4. et alleged that Jenkins, Hendrix, Taylor and others participated in a racketeering enterprise begining in 2011. JA xx ed. at 25. et alleged over acts that occurred as Early as the spring of 2015. JA xx ed. at 8. The United States Attorney's office number on the indictment (2016R00164) indicates that prosecutors began investigating GTTF officers in 2016 presumably well after the FBI began investigting GTTF officers, scrutinize them. Government counsel offered no more than summary assertions that the TAG investigators knew nothing about the contemporanous wrongdoing by GTTF officers. The district court erred by ruling, on this scant record, that the affidavit was not contaminated by the GTTF officers' conduct.

See Williams V. Jones, 2011 U.S. Dist LEXIS 111188
(E.D. Okla. 2010); Spellman V. Haley, 2002 U.S. Dist LEXIS
27308 (M.D. Ala. 2002)(Police suppressed an eyewitness
inconsistent statements and an officer's statement
regarding the size of a shoe print near the body,
Violations, Writ granted).

A prosecutor may not ask a series of questions designed
solely to impugn character of the accused before the
grand Jury. See United States V. Samango, 607 F2d
877, 883 (9th Cir. 1979)(agreeing that submission of
transcripts to the grand Jury served no other
purpose than calculated prejudice"); United States V.
Basurto, 497 F2d 781, 785-86 (9th Cir. 1974)(noting
a prosecutor knowingly presentation of perjured
testimony to the grand Jury violated the fifth
Amendment's guarantee of due process).

However, it is internal policy of the Department of
Justice to present exculpatory evidence to the
grand Jury whenever a prosecutor is "personally aware
of substantial evidence that directly negates the guilt
of a subject of the investigation." U.S. DEP'T OF
JUSTICE, UNITED STATES ATTORNEY'S OFFICE
MANUAL 9-11.23333 (Supp. 2002); See also

44

A.M. BAR ASS'N CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION AND DEFENSE FUNCTIONS STANDARDS 3-4.6(e)(4th ed. 2018) ("A prosecutor with personal knowledge of evidence that directly negates the guilt of a subject of the investigation should present or otherwise disclose that evidence ~~not~~ to the grand jury. The prosecutor should relay to the grand jury an request by the subject or target of an investigation to testify before the grand jury, or present other non-frivolous evidence claimed to be exculpatory"). See also United States v. Feurtado, 191 F.3d 420, 423-25 (4th Cir. 1999)(finding dismissal without prejudice an appropriate remedy for inadvertent misleading testimony presented to the grand jury by an agent).

To ensure that Mr. Harrison Constitutional rights are not violated by false testimony and information knowingly used by the Government, this Court should grant him a new trial, and or reduced his sentence. As shown from the above stated facts, the Government withheld Brady evidence from Mr. Harrison during his criminal trial, to deprive him of his file and liberty. The Court should vacate his sentence and schedule an evidentiary hearing.

) Trial Counsels Was Uneffective For Failure To Present John Harrison's Educational - Learning Disabilites To The Jury And To The District Court As Mitigation Factors. Also Counsels Failed To Properly Explain All Elements of The Offense To Their Client.

Unbelievably, John Harrison's severe learning disability is nowhere to be found in any of the file. Nowhere is this properly mentioned in the defendants' direct appeal brief, Sentencing memorandum, government's memorandum. and not in the PSR. John Harrison has significant education and learning disabilites. None of these issues were investigated, learned, and properly presented by Prior Counsels. A review of Harrison's last Undividualized Education Program (IEP), at the age of ten until today, demonstrates a significant learning disability, being assessed with rather significant reading difficulties persist, letter word identification word attack is also significantly below grade expectance.

46

) At the age of ten, his last reading and writing test scores would show how poor his performance really was. His decoding level score of 1.0% was a third (3rd) grade equivalent. His reading comprehension score registered at 4.0%, a third (3rd) grade level. Mr. Harrison has been told that the IEP Present Performance section clearly demonstrates a young man who cannot adequately read regular materials. Complex legal documents would be impossible for him to read and comprehend on his own. For Mr. Harrison, it was a critical function for his attorneys to be patient, and take the time to explain every little detail, possibly several times over to him. As frustrating as it is might have been, it was necessary. Not having adequate representation to explain the nature of all elements of the offense or even a plea agreement offered by the government, the level of proof required, each and every allegation made by the prosecution, trial pros and cons, risk versus reward of the trial, and the presumption of innocence with the benefit of doubt possibly falling his way on each contested

47

issue, John Harrism was left in a position of trying to figure this out on his own. With his limited reading comprehension and ability to understand legal documents, the system failed John Harrism.

) During the prior attorney Ms. Wicks questions a government witness concering Mr. Harrism. being in "special ed". As follows:

MS. WICKS: And you knew back then he was in special ed. Correct?

A          NO

MS WICKS: You didn't know that?

A          NO.

This is a clear demonstration that John Harrism needed an attorney to walk him through everything, he needed the entire process explained to him in child terms, he would also need a plea agreement read to him word for word, with a detailed explanation. His educational deficiencies also should have been presented to the Court and Jury during trial and

48

during sentencing, and on direct appeal, as a
point of mitigation under 18 U.S.C. 3551. His
severe learning disability is well documented,
easy to prove, and completely missing from
the direct appeal, sentencing memorandum, and
the PSR.

) Mental Retardation or Impaired Intellectual
   Functioning.

In Atkins v. Virginia, the Supreme Court noted that
"[M]entally retarded persons... have diminished
capacities to understand and process information,
to communicate, to abstract from mistakes and
learn from experience, to engage in logical
reasoning, to control impulses, and to understand
the reactions of others... often act on impulse
rather than pursuant to a premeditated plan, and...
are followers rather than leaders. Their deficiencies
do not warrant an exemption from criminal sanctions,
but they do diminish their personal culpability. 536
U.S. 304, 318 (2002). See also Tennard v. Dretke, 542 U.S.
274, 285-86 (2004)(noting that "impaired intellectual
functioning is inherently mitigating")

For these reasons, it is appropriate for sentencing courts to depart or vary downward in cases where a defendant suffered from a developmental disability or other impaired cognitive function. See, e.g., United States v. Rothwell, 847 F. Supp. 2d 1048, 1062 (E.D. Tenn. 2012)(Varying downward from forty-one to fifty-one month range to an eighteen-month sentence in child pornography case where defendant had borderline range of intellectual functioning); United States v. Meillier, 650 F. Supp. 2d 887, 897 (D. Minn. 2009)(sentencing defendant to one day in prison with thirty years supervised release because "Meillier is mentally retarded; he is intellectually speaking, an eleven-and-a-half-year-old boy").

No court would sentence an eleven-and-a-half-year-old boy to a lengthy term in a federal penitentiary for downloading images of other children engaged in sexual activity"); United States v. Santa, 2008 WL 2065560 (E.D.N.Y. May 19, 2008) (granting downward departure to 120 months from Guideline range of 262-327 months where defendant

51

in drug trafficking case had IQ of 58); United States
Cotto, 793 F. Supp. 64 (E.D.N.Y. 1992)(granting four-
level downward departure based on defendants
near mental retardation in conspiracy to obstruct
commerce case); Hall v. Florida, 134 S.Ct. 1986 (2014).

intellectual disabilities can be much more
difficult to identify than is commonly thought,
and defense counsel should arrange IQ and
other testing to determine disabilities but only
after first conducting a though life history
Investigation and gathering of documentary
evidence and with guidance from a specialist
and in the field of intellectual disability.
The issue may arise in federal capital trials
as well as federal habeas litigation. For examples
of appropriate definitions, see Hall v. Florida, 134
S.Ct. at 1994, and Brumfield v. Cain, 135 S.Ct.
2269, 2277-79 (2015).

With regard to the process for raising an Atkins
claim prior to or doing trial, at least one district
court has placed the inquiry in front of the jury

52

for them to determine unanimously, listing Mental retardation as a Mitigating factor on the Special Penalty Phase Verdict form.

However, in Mr. Harrison's case prior defense counsels made no request for a pre-trial hearing in his case. Other Courts have held a pre-trial hearing on the defendants' intellectual disability "in the interest of Judicial economy" United States v. Smith, 790 F. Supp. 2d 482 (E.D. La 2011). one of these further holdings that if the court fails to find intellectual disability the defendant may again assert it before the Jury at trial, United States v. Webster, 162 F 3d 308, 351 (5th Cir. 1998) ("After entering a sentence of death on the Verdict, the Court filed a finding entitled Factual Finding Regarding Mental Retardation"); United States v. Hardy, 644 F. Supp. 2d 749 (E.D. La 2008).

The Supreme Court has indicated that the Constitution does not dictate who the fact-finder should be for a claim of intellectual disability. Schiro v. Smith 546 US. 6, 7-8 (2005).

53

The Court in Schiro v. Smith, reversed the Ninth Circuit's order directing Arizona Courts to Conduct a Jury trial on the issue of Mental retardation, thus giving strength to those Circuits that have held Mental retardation need not be determined exclusively by a Jury. As for the burden and standard of Proof, at least two Courts of Appeals have found that the government bears no burden to disprove Mental retardation beyond reasonable doubt, and several district courts have placed the burden on the defense by preponderance of evidence, See seen re Johnson, 334 F.3d 403 (5th Cir. 2003); Montgomery, 2014 WL 1516147, at *4.

Mr. Harrison is thus entitled to relief under Section 2255 because his conviction and sentence were imposed in violation of the Constitution or laws of the United States, and are otherwise subject to collateral attack, 28 U.S.C. 2255(a) because "the alleged error constituted a fundamental defect which enherently result[s]" in a complete Miscarriage of Justice". Siddiqi v. United States, 98 F.3d 1427, 1438 (2d Cir. 1996) (quoting Reed v. Farley, 512 U.S. 339, 354, (1994) (internal quotation Marks omitted).

54

To ensure that John Harrison's constitutional rights are not violated by a false sentencing enhancements, this court should grant a new trial, and or reduce the sentence. If the court chooses not to do so, it should at the very least grant an evidentiary hearing so that Mr. Harrison could prove his case.

Respectfully submitted

John Harrison, Pro se

To: Clerk of the District Court

<u>Certificant of Service And Filing</u>

Pursuant to the principles of Houston v Lack, 487 U.S. 266, 276 (1988), Mr. Harrison has this day filed With the Court and served counsel for the opposing Party With the required original and Copies of the enclosed documents by depositing Same in the prison legal Mail Collection box, in Sealed envelopes, first Class postage affixed and addressed to Clerk, U.S. District Court For the District of Baltimore Maryland, and to United States Attorneys.

Signed under Penalty of Perjury 28 U.S.C. 1746 this 29th day of October, 2023

John Harrison
Reg. No.
USP Hazelton
P.O. Box 2000
Bruceton Mills
West Virginia 26525

56